AO 106 (Rev. 04/10)  Application for a Search Warrant



# UNITED STATES DISTRICT COURT

for the

Eastern District of California



FILED

DEC 18 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of )<br><br>INFORMATION ASSOCIATED WITH THE )<br>DROPBOX ACCONT ASSOCIATED WITH )<br>AREED8821@GMAIL.COM THAT IS STORED AT )<br>PREMISES CONTROLLED BY DROPBOX, INC. )<br> ) | Case No.<br><br>2:17-SW-1078 DB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

## SEE ATTACHMENT A, attached hereto and incorporated by reference.

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

## SEE ATTACHMENT B, attached hereto and incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Minors |
| 18 U.S.C. § 2252(a)(2) | Receipt and Distribution of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

## SEE AFFIDAVIT, attached hereto and incorporated by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ryan Vazquez, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.
Date: **12-18-17**

_____
*Judge's signature*

City and state:  Sacramento, California

Deborah Barnes, U.S. Magistrate Judge

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Ryan Vazquez, being duly sworn, depose and state the following:

## EXPERIENCE AND TRAINING

I have been employed as a Special Agent of the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) since October 2010, and I am currently assigned to the Assistant Special Agent In Charge Sacramento. While employed by HSI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. Prior to this, I was a Special Agent with the United States Air Force Office of Special Investigation (AFOSI) from March 2004 to March 2009, and a Special Agent with the United States Environmental Protection Agency from March 2009 to October 2010. I have gained experience through training at the Defense Computer Forensic Laboratory for computer forensics in 2005, in my capacity as a Special Agent with AFOSI. I have spent a lot of time conducting these types of investigations. Currently, child pornography and child exploitation cases account for approximately 30% of my caseload. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have worked child pornography cases as an investigator and a forensic agent. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, and I am authorized by law to request a search warrant.

1.      I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to require Dropbox, Inc. to disclose to the United States information relating to a certain Dropbox account that was created, utilized,

---

Affidavit                                                                                     Page 1

maintained and/or connected with the email address areed8821@gmail.com and/or the usernames "Aaron Reed," as described in Attachment A and Section I of Attachment B. The information to be searched is stored at premises which are owned, maintained, controlled, or operated by Dropbox, Inc., with a business office at 333 Brannan Street, San Francisco, CA 94107. Upon receipt of the information, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      The facts and conclusions in this Affidavit are based upon: (i) my personal knowledge gathered during my participation in this investigation; (ii) my training and experience; (iii) the training and experience of other law enforcement personnel with whom I have discussed this investigation; and (iv) a review of information obtained by other law enforcement personnel participating in this investigation.

3.      This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## CRIMINAL VIOLATIONS

4.      HSI is currently investigating the production, possession, and receipt of child pornography through the Internet. Based on my training and experience and the facts set forth in this Affidavit, there is probable cause to believe that violations of (i) Title 18, United States Code, Section 2251(a) (Sexual Exploitation of Minors); (ii) Title 18, United States Code, Sections 2252(a)(2) and 2252A(a)(1)–(2) (Receipt and Distribution of Child Pornography); and (iii) Title 18, United States Code, Section 2252(a)(4)(B) (Possession of Child Pornography) have been committed. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States (including a magistrate judge of such a court) . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## FACTS ESTABLISHING PROBABLE CAUSE

6.      On September 14, 2015, HSI Toronto received a request for assistance from the Canadian Office of Provincial Police (OPP) regarding a suspect who enticed two victims in Canada, a 14-year-old mentally disabled child and a 9-year-old child, to produce and provide child sexual exploitation photographs and videos of themselves via the Internet through the messaging service Kik. In response to a Canadian Production Order for Records, Kik provided IP logs, which indicated the individual to whom the images were sent used IP addresses in California. Wave Broadband records for the IP addresses in California indicated the service was subscribed to Aaron REED.

7.      In February 2016, a federal search warrant was executed at REED's residence. During an interview at the time of the search, REED admitted to using his cell phone to communicate with the minor victims and to receiving sexually explicit images from the victims. REED also admitted that he knew the victims were underage. The cellular phone REED had at the time of the search warrant was not the one he had used to communicate with the victims, as had had recently "upgraded" his phone and turned his old phone (with the chats) in to Sprint.

8.      A review of Kik chat logs recovered from the 14-year-old victim's electronic devices show the victim and REED exchanged sexually explicit material over the course of

approximately six months in 2015.  The messages also show how REED groomed the victim into

providing progressively more explicit material over time (from single images to videos of

penetration with objects), culminating in REED using his exploitative relationship with his first

victim to obtain sexually explicit images of the second, 9-year-old victim as well.

9.     On December 7, 2017, REED was indicted in the Eastern District of California

for one count of sexual exploitation of children in violation of 18 U.S.C. § 2251(a), four counts

of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), and two counts of

transferring obscene material to minors in violation of 18 U.S.C. § 1470.

10.    On December 11, 2017, REED was arrested in Roseville, CA.  During the arrest,

REED waived his Miranda rights and agreed to be interviewed.  During the interview, REED

denied having any child pornography on his cellular phone.

11.    Reed also signed a consent form to search his Samsung Galaxy S7 cellular phone.

HSI Computer Forensic Agent (CFA) Kurt Blackwelder and Computer Forensic Analyst, Victor

Reyes previewed REEDs cellular phone utilizing forensic tools.  During the preview, the agents

discovered a video that appeared to be consistent with child pornography.  The video was

entitled "[pthc] Falkovideo, Custom#8[6yo 1 st Anal, 06m44s-HiRes] Anal 2014 opva preteen

loli 11yo 10yo pedo mom family.wmv."[1]  A review of the video revealed that it depicts a pre-

pubescent female of approximately 5 or 6 years of age involved in various sex acts with adults.

12.    I know from my training an experience and conversations with other agents, that

child pornography file names often use the following abbreviations:  "pthc" is used to indicate

"pre-teen hard core," "pedo" is used to indicate "pedophilia," and "opva" is used to indicate

"Onion Pedo Video Archive," a reference to videos obtain from what is commonly referred to as

---

[1] Please note that the file name contains additional characters after the word "Hi Res" and before
the word "anal," however, they were not displayed correctly and are not listed above.

the "dark web." I know from my training, experience, and conversations with other law enforcement agents that The Onion Router (TOR) or similar anonymous web browsing software is used to access the "dark web," websites not viewable by the general public using normal web browsers, and that the Onion Pedo Video Archive is a website on the dark web. Those interested in obtaining or exchanging child pornography do so on the dark web in order to conceal their identities and avoid detection. Based upon the filename on this video I believe REED may be using TOR or a similar anonymous browser to access child pornography on the dark web.

13.     A quick review other video file names revealed additional names consistent with child pornography. The child pornography was inside of a folder utilized by a Dropbox account. A manual review of the phone showed that the Dropbox application was installed, which, when opened, displayed the username "Aaron Reed" and the email address "areed8821@gmail.com."

14.     At that point, forensic review of the cell phone was stopped while a search warrant was sought and the cell phone was transported to the HSI office at 650 Capitol Mall, Sacramento, CA 95814.

## ADDITIONAL BACKGROUND INFORMATION

### A.     DROPBOX

15.     "Dropbox" is a file hosting service that offers cloud storage and file synchronization that allows users to access and share files on computers, phones, tablets, and the Dropbox website. Dropbox's services are "designed to make it simple for [a user] to store [his or her] Stuff, collaborate with others, and work across multiple devices." *See* https://www.dropbox.com/privacy.

16.     According to Dropbox's privacy policy, Dropbox stores the user's "Stuff," such as "files, messages, comments, and photos—as well as information related to it," such as the

user's name, email address, password, username, profile picture, phone number, payment info, physical address, account activity, and contacts. *See* https://www.dropbox.com/privacy and https://www.dropbox.com/help/63 (last viewed April 3, 2017). Dropbox also collects information related to how the user uses Dropbox's services, "including actions [the users take in his or her account] (like sharing, editing, viewing, and moving files or folders). . . . and about the devices [the user] use to access the Services. This includes things like IP address, the type of browser and device [the user] use[s], the web page [the user] visited before coming to [the Dropbox] site, and identifiers associated with [the user's] devices." The user's devices may also transmit location information to Dropbox.

17.     Dropbox allows subscribers to obtain accounts at the domain name www.dropbox.com. Subscribers obtain a Dropbox account by registering with an email address. During the registration process, Dropbox asks subscribers to provide basic personal identifying information. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). To sign into the user's Dropbox account, the user enters their email and password. After accessing the Dropbox website, if an individual correctly inputs the email address and password, he or she would have the ability to access and open the account where various materials are stored.

18.     When the subscriber transfers a file to a Dropbox account, it is initiated at the user's computer or electronic device, transferred via the Internet to the Dropbox servers, and then can automatically be synchronized and transmitted to other computers or electronic devices that have been registered with that Dropbox account. This includes online storage in Dropbox servers. If the subscriber does not delete the content, the files can remain on Dropbox servers

indefinitely.  Even if the subscriber deletes their account, it may continue to be available on the Dropbox servers for a certain period of time.

19.     Once a user has a Dropbox account, they can invite other Dropbox users to access their shared folders.  A shared folder is one in which more than one user has access to, and can add, download, or delete content.  If a user is invited to join another user's folder, the invitation request is sent to the registered email account.

20.     A Dropbox user can also create a "shared link" to share file content with individuals who do not have a Dropbox account.  The Dropbox user sends the shared link, and anyone who clicks on the link can view, comment, or download a copy of the files, however, they cannot edit the original files.  *See* https://www.dropbox.com/help/167 (last accessed April 3, 2017).

21.     In some cases, Dropbox account users will communicate directly with Dropbox about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Online storage providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

22.     Based on my training and experience, I know that online storage mediums such as Dropbox make it possible for the user to have access to saved files without the requirement of storing said files on their own computer or other electronic storage device.  Dropbox is an "offsite" storage medium for data that can be viewed at any time from any device capable of accessing the internet.  Users can store their files on Dropbox and avoid having the files appear on their computer.  Anyone searching an individual's computer that utilizes Dropbox would not be able to view these files if the user opted only to store them at an offsite such as Dropbox.

This is often viewed as advantageous for collectors of child pornography in that they can enjoy an added level of anonymity and security.

B.   DEFINITIONS

a.   Statutory Definitions

23.   "Child Pornography" includes the definition found at 18 U.S.C. § 2256(8), and is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

24.   As used in this Affidavit, "child erotica" means materials or items that are sexually arousing to certain individuals but that are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions.  Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

25.   "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

26.   "Minor" means any person under the age of eighteen years.  *See* 18 U.S.C. § 2256(1).

27.     "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, genital-anal, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.  *See* 18 U.S.C. § 2256(2).

### b.   The Internet and Technical Terms Pertaining to Computers

28.     As part of my training and experience, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers[2] and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite.  Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state.  Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail").  An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet (through a university, an employer, or a commercial service such as an "Electronic Service Provider" or "ESP" [*see* definition of "Electronic Service Provider" below]).  Once the individual has accessed the Internet, that individual can use Internet mail

---

[2]  The term "computer" is defined by 18 U.S.C. § 1030(e)(1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."

services, including sending and receiving e-mail.  In addition, the individual can visit web

sites (*see* definition of "web sites" below), and make purchases on the web sites.

29.      Set forth below are some definitions of technical terms, used throughout this

Affidavit, and in Attachment A hereto, pertaining to the Internet and computers more

generally.

a.   <u>Client/Server Computing</u>:  Computers on the Internet are identified by the

type of function they perform. A computer that provides resources for other

computers on the Internet is known as a server.  Servers are known by the

types of service they provide; that is, how they are configured. For example, a

web server is a machine that is configured to provide web pages to other

computers requesting them. A client computer is a computer on the Internet

that is configured to request information from a server configured to perform a

particular function. For example, if a computer is configured to browse web

pages and has web page browsing software installed, it is considered a web

client.

b.   <u>Compressed file</u>: A file that has been reduced in size through a compression

algorithm to save disk space.  The act of compressing a file will make it

unreadable to most programs until the file is uncompressed.

c.   <u>Digital device</u>:  includes any electronic system or device capable of storing

and/or processing data in digital form, including: central processing units;

laptop or notebook computers; personal digital assistants; wireless

communication devices such as telephone paging devices, beepers, and

mobile telephones; peripheral input/output devices such as keyboards,

printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices such as modems, cables, and connections; storage media such as hard disk drives, floppy disks, compact disks, magnetic tapes, and memory chips; and security devices.

d. <u>Domain Name</u>: Domain names are common, easy to remember names associated with an Internet Protocol address (defined below). For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32.

e. <u>Hash value</u>: A mathematical algorithm generated against data to produce a numeric value that is representative of that data.  A hash value may be run on media to find the precise data from which the value was generated.  Hash values cannot be used to find other data.

f. <u>Image or copy</u>: An accurate reproduction of information contained on an original physical item, independent of the electronic storage device. "Imaging" or "copying" maintains contents, but attributes may change during the reproduction.

g. <u>Electronic Service Providers ("ESPs") and the Storage of ESP Records</u>: ESPs, formerly known as ISPs (Internet Service Providers) are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ESPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.  ESPs can offer a range of options in providing access to the Internet including telephone based

dial-up, broadband based access via digital subscriber line ("DSL") or cable television, dedicated circuits, or satellite based subscription.  ESPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports.  Many ESPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber.  By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ESP over a telephone line or through a cable system, and can access the Internet by using his or her account name and personal password. ESPs maintain records ("ESP records") pertaining to their subscribers (regardless of whether those subscribers are individuals or entities).  These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ESP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ESPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ESPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.  Typically, e-mail that has not been opened by an ESP customer is stored temporarily by an ESP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by

statute as "electronic storage." *See* 18 U.S.C. § 2510 (15). A service provider

that is available to the public and provides storage facilities after an electronic

communication has been transmitted and opened by the recipient, or provides

other long-term storage services to the public for electronic data and files, is

defined by statute as providing a "remote computing service." *See* 18 U.S.C.

§ 2711(2).

h.   Internet Protocol Address ("IP address"): Every computer or device on the

Internet is referenced by a unique Internet Protocol address the same way

every telephone has a unique telephone number. An IP address is a series of

four numbers separated by a period, and each number is a whole number

between 0 and 254. An example of an IP address is 192.168.10.102.  Each

time an individual accesses the Internet, the computer from which that

individual initiates access is assigned an IP address. A central authority

provides each ESP a limited block of IP addresses for use by that ESP's

customers or subscribers. Most ESP's employ dynamic IP addressing, that is

they allocate any unused IP addresses at the time of initiation of an Internet

session each time a customer or subscriber accesses the Internet. A dynamic

IP address is reserved by an ESP to be shared among a group of computers

over a period of time. The ESP logs the date, time, and duration of the Internet

session for each IP address and can identify the user of that IP address for

such a session from these records. Typically, users who sporadically access

the Internet via a dial-up modem will be assigned an IP address from a pool of

IP addresses for the duration of each dial up session. Once the session ends,

the IP address is available for the next dial up customer. On the other hand, some ESP's, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a static IP address is an IP address that does not change over a period of time and is typically assigned to a specific computer.

i.  <u>Log file</u>: Log files are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a Web site was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

j.  <u>Malicious Software ("malware")</u>: Software designed to infiltrate a computer without the owner's informed consent.  The expression is a general term used by computer professionals to mean a variety of forms of hostile, intrusive, or annoying software or program code.  Software is considered malware based on the perceived intent of the creator rather than any particular features. Malware includes computer viruses, worms, trojan horses, most rootkits, spyware, dishonest adware, crimeware, and other malicious and unwanted software.

k.  <u>Metadata</u>:  Data contained in a file that is not usually associated with the content of a file but is often associated with the properties of the application or device that created that file.  For example, a digital camera photograph often has hidden data that contains information identifying the camera that manufactured it and the date the image was taken.

l.  <u>Steganography</u>: Art and science of communicating in a way that hides the existence of the communication.  It is used to hide a file inside another.  For example, a child pornography image can be hidden inside another graphic image file, audio file, or other file format.

m.  <u>Downloading</u>: Downloading is the transmission of a file from one computer system to another.  From the Internet user's point-of-view, to download a file is to request it from another computer (or from a Web page on another computer) and to receive it.

n.  <u>Uploading</u>: Uploading is the transmission in the other direction: from one computer to another computer. From an Internet user's point-of-view, uploading is sending a file to a computer that is set up to receive it.

o.  <u>Trace Route</u>: A trace route is an Internet debugging tool used to document the list of inter-connected computers between two computers on the Internet. A trace route will list the names and IP addresses of computers that provide the physical link between two computers on the Internet. Trace routes are useful tools to help geographically identify where a computer on the Internet is physically located, and usually includes information about the registered owner of computers on the Internet.

p.  Uniform Resource Locator ("URL"): The address of a resource or file located on the Internet, also called a "domain name".

q.  Web Site Hosting: Web site hosting provides the equipment and services required to host and maintain files for one or more web sites and to provide rapid Internet connections to those web sites. Most hosting is "shared," which means that multiple web sites of unrelated companies are on the same server in order to reduce associated costs. When a client develops a Web site, the client needs a server and perhaps a web hosting company to host it. "Dedicated hosting" means that the web hosting company provides all of the equipment and assumes all of the responsibility for technical support and maintenance of a Web site. "Co-location" means a server is located at a dedicated hosting facility designed with special resources, such as a secure cage, regulated power, a dedicated Internet connection, online security and online technical support. Co-location facilities offer customers a secure place to physically house their hardware and equipment as opposed to keeping it in their offices or warehouses, where the potential for fire, theft, or vandalism is greater.

r.  Cloud services: Services made available to users on demand via the Internet from a cloud computing provider's servers as opposed to being provide from a user's own , personal servers.  Users can easily share files through cloud accounts with others by simply sending others an online link to the file being shared.

s.   <u>Chat:</u>  Chat refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

C.   <u>COMPUTERS CELLULAR PHONES AND CHILD PORNOGRAPHY</u>

30.   Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers, cellular phones and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies.  The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images.  As a result, there were definable costs involved with the production of pornographic images.  To distribute these images on any scale also required significant resources.  The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public.  The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths.  More recently, through the use of computers, cellular phones and the Internet, distributors of child pornography use membership-based/subscription-based web sites to conduct business, allowing them to remain relatively anonymous.

31.     In addition, based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers and cellular phone has also revolutionized the way in which child pornography collectors interact with, and sexually exploit, children.   Computers and cellular phones serve four basic functions in connection with child pornography: production, communication and distribution, and storage.   More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

    a.   <u>Production</u>: Producers of child pornography can now produce both still and moving images directly from a common video or digital camera.   The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer.   Images can then be stored, manipulated, transferred, or printed directly from the computer.   Images can be edited in ways similar to how a photograph may be altered.   Images can be lightened, darkened, cropped, or otherwise manipulated.   The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format.   As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography.   In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

    b.   <u>Communication and Distribution</u>: The Internet allows any computer to connect to another computer.   By connecting to a host computer, electronic contact can be made to literally millions of computers around the world.   In addition, the Internet allows

users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) web sites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache[3] to look for "footprints" of the web sites and images accessed by the recipient.

c.  Storage: The computer's and cell phone's capability to store images in digital form makes it an ideal repository for child pornography.  A single floppy disk can store dozens of images and hundreds of pages of text.  The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years.  Hard drives with the capacity of 1 terrabyte are not uncommon.  These drives can store hundreds of thousands of images at very high resolution.  Magnetic storage located in host computers adds another dimension to the equation.  It is possible to use a video camera to capture an image, process that image in a computer or cellular with a video capture board, and

save that image to storage in another country. Once this is done, there is no readily

apparent evidence at the "scene of the crime." Only with careful laboratory

examination of electronic storage devices is it possible to recreate the evidence trail.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

32.     Based upon Affiant's training and experience, Affiant knows that people involved

in the collection and trading of files of child pornography will oftentimes share access to their

cloud based storage accounts, such as Dropbox. By sending a Dropbox link, a Dropbox user can

make their collection of child pornography readily viewable and accessible to the invitee.

33.     Affiant also knows that people who are involved in the collection, trading and

possession of child pornography will often share only portions of their online storage and keep

other items stored in separate folders within the same account.  These items can potentially be

children that the subject has physical access to and thus is memorializing those contacts.  In

addition, other files, even if they do not contain child exploitation material, may contain images

or videos, which would assist in identifying the owner of the account.

34.     I know from my training and experience that the complete contents of Dropbox

accounts may be important to establishing the actual user or users who have dominion and

control of shared folders within an account at a given time.  Dropbox accounts may be registered

in false names or screen names from anywhere in the world with little to no verification by the

service provider.  They may also be used by multiple people.  Given the ease with which these

accounts may be created under aliases, and the rarity with which law enforcement has eyewitness

testimony about a defendant's use of an account, investigators often have to rely on

circumstantial evidence to show that an individual was the actual user of a subject account.  Only

by piecing together information contained in the contents of an account may an investigator

establish who was the actual user of an account. Often those pieces will come from a time period before the account was used in the criminal activity. Limiting the scope of the search for information showing the actual user of the account would, in some instances, prevent the government from identifying the user of the account and, in other instances, prevent a defendant from suggesting that someone else was responsible. Therefore, the content of a given account often provides important evidence regarding the actual user's dominion and control of the account. For the purpose of searching for Dropbox content demonstrating the actual user of the account, I am requesting a warrant requiring Dropbox to turn over all of the contents of the account without a date restriction for review by government-authorized persons. Furthermore, the government must be allowed to determine whether other individuals had access to the account. If the government were constrained to review only a small subsection of the Dropbox account, that small subsection might give the misleading impression that only a single user had access to the account.

35.     Moreover, people who are involved in the collection, trading and possession of Child Pornography often will have been conducting this type of activity for an unknown period of time. Without having access to all of the information that is stored within the user's Dropbox account, from the date that the account was opened to the date of the warrant being executed, information that may lead to identification of victims of Child Sexual Exploitation may be missed as well as evidence showing the time period and duration of the criminal activity.

36.     Since Affiant does not know the actual date when the account was created, Affiant is requesting information from the account creation date to the date that the warrant is executed.

37.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Dropbox to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Dropbox shall deliver the information described in Section I of Attachment B within 10 days of the service of this warrant.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

38.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## CONCLUSION

39.     Based on the foregoing, I request that the Court issue the proposed search warrant.  Because the warrant will be served on Dropbox Inc. who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Ryan Vazquez
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on:_____

The Honorable Deborah Barnes
UNITED STATES MAGISTRATE JUDGE

Approved as to form by AUSA Jeremy Kelley

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

Dropbox Account to Aaron Reed

The property to be searched is all information associated with the Dropbox Inc. account(s) that was created, utilized, maintained and/or connected with or accessed by:

(1) The email address areed8821@gmail.com; and/or

(2) The username "Aaron Reed."

Which is stored at premises owned, maintained, controlled, or operated by Dropbox, Inc., headquartered at 333 Brannan Street, San Francisco, California 94107 (the "Account(s)").

## **ATTACHMENT B**

### **Items to be seized**

**I.     INFORMATION TO BE DISCLOSED BY DROPBOX, INC.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Dropbox, Inc. including any messages, records, files, logs, or information that have been deleted but are still available to Dropbox or have been preserved pursuant to requests made under 18 U.S.C. § 2703(f), Dropbox Inc. is required to disclose the following information to the government for each account, identifier, or link listed in Attachment A:

a.      All records or other information regarding the identification of the account(s), to include full name, physical address, telephone numbers and other identifiers, email addresses, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

b.      All information automatically recorded by Dropbox from a user's Device, including its software and all activity using the Services, to include, but not limited to:  a utilizing device's IP address, browser type, web page visited immediately prior to connecting to the Dropbox website, all information searched for on the Dropbox website, locale preferences, identification numbers associated with connecting devices, information regarding a user's mobile carrier, and configuration information.

c.      The types of service utilized by the user(s).

d.      All records or other information stored by an individual using the account(s) and links, including stored or preserved copies of:  all files uploaded, downloaded or accessed using the Dropbox service, including all available metadata concerning these files, as well as, email "invites sent or received via Dropbox, contact lists, and the creation of "shared links."

e.      All records pertaining to communications between Dropbox and any person regarding the account(s), including contacts with support services and records of actions taken.

f.      All records of communications or messaging between the user(s) of the account(s) and links and other Dropbox users.

g.      For each folder within the account(s) and each link, all unredacted records including the unique user ids of each individual who created, joined or utilized the folder, by either adding, deleting, or accessing content from the folder.

h.      For each folder within the account(s) and each link, information about who accessed the files via a shared link, including IP address and records containing information about the device from which the link was accessed.

i.      Records of session times and durations and IP addresses associated with each of these sessions for every user in each folder in this account and each link.

j.      Telephone or instrument numbers provided to Dropbox when each of these users created their accounts, and records of all devices connected to the Dropbox account for each of the individuals accessing the folders in the account(s) and links.

k.      A complete list of all users within each folder found in the account(s) and links, including every user name, user identification number, corresponding email address, physical address, and date the user joined Dropbox.

l.      Records of session times and durations and IP addresses associated with each of these sessions for every user in each folder in the account(s) and each link.

m.      For each folder found in the account(s) and links, all information regarding the user who created the folder, the creation date, and a complete listing of all users who joined, accessed, and left the folder, including the dates each joined, accessed or left the folder.  All information regarding when, if applicable, each folder was deleted and who deleted it.

n.      For the individuals identified as users of the folders in the account(s) or links, any means or sources of payment for this service, including credit card and bank account numbers.

## II.    INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252, and 2252A, including for each account, identifier, or link listed on Attachment A, information pertaining to the following matters:

(a) Any evidence of the attempted or actual persuasion, inducement, enticement, or coercion of any minors to engage in sexually explicit conduct for the purpose of producing visual depictions of the conduct;

(b) All records relating to the use of internet messaging services and contact between Aaron REED and any persons purporting or appearing to be minors;

(c) Any child pornography or visual depictions of minors engaged in sexually explicit conduct in any form;

(d) Any visual depiction of genitalia;

(e) Any items, images, documents, communications, records, and information related to the possession, transportation, or production of child pornography or visual depictions of minors engaged in sexually explicit conduct;

(f) Any information pertaining to Aaron REED's interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, or erotica

(g) Any evidence of the attempted or actual persuasion, inducement, enticement, or coercion of any individual or minor to travel in interstate commerce for the purpose of engaging in any illicit sexual conduct;

(h) Evidence indicating the user's state of mind as it relates to the crimes under investigation;

(i) All information regarding deletion of images, wiping software, encryption or other methods to avoid detection by law enforcement; and

(j) The identity of the person(s) who created or used the account(s) and links, including records and images to help reveal the whereabouts of such person(s).

## III.    PROVIDER PROCEDURES

Dropbox shall deliver the information described in Section I of Attachment B within 10 days of the service of this warrant.  Dropbox shall send such information, on any digital media device, to:

Special Agent Ryan Vazquez
650 Capitol Mall 3-100
Sacramento, CA 95814

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) | |
| INFORMATION ASSOCIATED WITH THE DROPBOX ) ACCONT ASSOCIATED WITH ) AREED8821@GMAIL.COM THAT IS STORED AT ) PREMISES CONTROLLED BY DROPBOX, INC. ) | Case No.  2: 1 7 - S W - 1 0 7 8 DB |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

## SEE ATTACHMENT A, attached hereto and incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

## SEE ATTACHMENT B, attached hereto and incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   12-18-17 @ 11:07 AM          _____
                                                                                                    *Judge's signature*

City and state:      Sacramento, California _____          Deborah Barnes, U.S. Magistrate Judge
                                                                                                    *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____                    _____
Signature of Judge                                                      Date

## **ATTACHMENT A**

## **PROPERTY TO BE SEARCHED**

Dropbox Account to Aaron Reed

The property to be searched is all information associated with the Dropbox Inc. account(s) that was created, utilized, maintained and/or connected with or accessed by:

(1) The email address areed8821@gmail.com; and/or

(2) The username "Aaron Reed."

Which is stored at premises owned, maintained, controlled, or operated by Dropbox, Inc., headquartered at 333 Brannan Street, San Francisco, California 94107 (the "Account(s)").

## ATTACHMENT B

## Items to be seized

### I.     INFORMATION TO BE DISCLOSED BY DROPBOX, INC.

To the extent that the information described in Attachment A is within the possession, custody, or control of Dropbox, Inc. including any messages, records, files, logs, or information that have been deleted but are still available to Dropbox or have been preserved pursuant to requests made under 18 U.S.C. § 2703(f), Dropbox Inc. is required to disclose the following information to the government for each account, identifier, or link listed in Attachment A:

a.      All records or other information regarding the identification of the account(s), to include full name, physical address, telephone numbers and other identifiers, email addresses, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

b.      All information automatically recorded by Dropbox from a user's Device, including its software and all activity using the Services, to include, but not limited to:  a utilizing device's IP address, browser type, web page visited immediately prior to connecting to the Dropbox website, all information searched for on the Dropbox website, locale preferences, identification numbers associated with connecting devices, information regarding a user's mobile carrier, and configuration information.

c.      The types of service utilized by the user(s).

d.      All records or other information stored by an individual using the account(s) and links, including stored or preserved copies of: all files uploaded, downloaded or accessed using the Dropbox service, including all available metadata concerning these files, as well as, email "invites sent or received via Dropbox, contact lists, and the creation of "shared links."

e.      All records pertaining to communications between Dropbox and any person regarding the account(s), including contacts with support services and records of actions taken.

f.      All records of communications or messaging between the user(s) of the account(s) and links and other Dropbox users.

g.      For each folder within the account(s) and each link, all unredacted records including the unique user ids of each individual who created, joined or utilized the folder, by either adding, deleting, or accessing content from the folder.

h.      For each folder within the account(s) and each link, information about who accessed the files via a shared link, including IP address and records containing information about the device from which the link was accessed.

i.      Records of session times and durations and IP addresses associated with each of these sessions for every user in each folder in this account and each link.

j.      Telephone or instrument numbers provided to Dropbox when each of these users created their accounts, and records of all devices connected to the Dropbox account for each of the individuals accessing the folders in the account(s) and links.

k.      A complete list of all users within each folder found in the account(s) and links, including every user name, user identification number, corresponding email address, physical address, and date the user joined Dropbox.

l.     Records of session times and durations and IP addresses associated with each of these sessions for every user in each folder in the account(s) and each link.

m.     For each folder found in the account(s) and links, all information regarding the user who created the folder, the creation date, and a complete listing of all users who joined, accessed, and left the folder, including the dates each joined, accessed or left the folder. All information regarding when, if applicable, each folder was deleted and who deleted it.

n.     For the individuals identified as users of the folders in the account(s) or links, any means or sources of payment for this service, including credit card and bank account numbers.

## II.    INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252, and 2252A, including for each account, identifier, or link listed on Attachment A, information pertaining to the following matters:

(a) Any evidence of the attempted or actual persuasion, inducement, enticement, or coercion of any minors to engage in sexually explicit conduct for the purpose of producing visual depictions of the conduct;

(b) All records relating to the use of internet messaging services and contact between Aaron REED and any persons purporting or appearing to be minors;

(c) Any child pornography or visual depictions of minors engaged in sexually explicit conduct in any form;

(d) Any visual depiction of genitalia;

(e) Any items, images, documents, communications, records, and information related to the possession, transportation, or production of child pornography or visual depictions of minors engaged in sexually explicit conduct;

(f) Any information pertaining to Aaron REED's interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, or erotica

(g) Any evidence of the attempted or actual persuasion, inducement, enticement, or coercion of any individual or minor to travel in interstate commerce for the purpose of engaging in any illicit sexual conduct;

(h) Evidence indicating the user's state of mind as it relates to the crimes under investigation;

(i) All information regarding deletion of images, wiping software, encryption or other methods to avoid detection by law enforcement; and

(j) The identity of the person(s) who created or used the account(s) and links, including records and images to help reveal the whereabouts of such person(s).

## III.    PROVIDER PROCEDURES

Dropbox shall deliver the information described in Section I of Attachment B within 10 days of the service of this warrant. Dropbox shall send such information, on any digital media device, to:

Special Agent Ryan Vazquez
650 Capitol Mall 3-100
Sacramento, CA 95814